### H. H. REALTY CO. v. FRIEDLIEB.

(Supreme Court, Appellate Term, First Department. June 5, 1914.)

Appeal from Municipal Court, Borough of Manhattan, First District.
Action by the H. H. Realty Company against Elias Friedlieb. Judgment for defendant, and plaintiff appeals. Affirmed.

Argued May term, 1914, before GUY, BIJUR, and PENDLETON, JJ.

Eph. A. Karelsen, of New York City (J. Lewis Parks, Jr., of New York City, of counsel), for appellant.
Samuel I. Goldberg, of New York City, for respondent.

PER CURIAM. Judgment affirmed, with costs. Costs to be offset against the judgment.

GUY and PENDLETON, JJ., concur.

BIJUR, J. (dissenting). Defendant occupied premises of the plaintiff under a five-year lease in writing.

The only question involved on this appeal is the amount of the rent due August 1, 1913. The August payment fixed in the lease is $200. The nineteenth clause of the lease reads as follows:

"The landlord hereby consents to the sale by the tenant on the premises of bottled liquors only, provided however, that the landlord may on ten days' notice to the tenant revoke the said privilege, in which event there shall be deducted from the payment of two hundred ($200.00) dollars to be made on August 1st of each year, the sum of one hundred ($100.00) dollars, and the rent shall be reduced accordingly; but in other respects the terms and provisions of this lease to remain as herein provided."

The tenant testified: That in May, 1912, he complained to the president of the plaintiff that another party on the premises was allowed to sell liquor, and that this was unfair to the tenant; that thereupon plaintiff's president replied:

" 'It was impossible for me, I could not cancel Rickman's license, so I will have to drop your privilege. I will allow you next year. This year you took out already a license and I can't do anything. Next year you don't have to carry liquor.' That is the conversation I had with Mr. Hart. I said: 'It is not fair, because I spent $500 to $600, and I have all the liquors, everything. You gave that to my neighbor.' 'Well,' he said, 'I couldn't do anything. He is an old tenant of mine, and, if I was to cancel his liquor license, he was going to move and leave my store empty. I could not do it.' * * * He said: 'No, you have your liquor license and you must pay me. Next year if you don't keep liquors you don't have to keep paying me.' * * * Q. What was your conversation with Mr. Hart that you said you had? A. Mr. Hart asked the conversation * * * it was not fair for the landlord to do such a thing as that; that he allowed the neighbor next door to carry liquors when he knew I was going to carry liquor. I was paying for it, $100. Mr. Hart said he couldn't help that, that man will move away if he didn't give him any liquor license, and said: 'I have this agreement with this man. Never mind, I mean to try to do all I can.' Why he should do any such thing. He said: 'I couldn't help it now. Next year you can drop your privilege and I will allow you for it, but this year you will have to pay for it.' I said, 'I would not pay for it.' He said: 'You will have to. Our agreement states it. Go to your lawyer.' I did not want to argue with Mr. Hart, I paid the first year, which I ought not to pay it. The agreement was between me and Mr. Hart, he knows the way it is, about the liquor license."

The tenant also testified that the next year he did not sell liquor.

It is evident that the nineteenth clause of the lease gave a privilege to the landlord, namely, of revoking the tenant's right to sell liquor with a consequent reduction of rent to the tenant. The tenant's version of the conversation with plaintiff's president would establish an entirely new agreement in this respect giving the tenant the right to give up the sale of liquor and virtually award himself thereby a reduction of the rent.

I am unable to agree with my colleagues that the statements of the landlord's president as testified to by the tenant can be interpreted as a revocation of the privilege. The landlord did not therein nor thereby even pretend to exercise an option accorded to the plaintiff, but distinctly made an offer to the tenant that if the latter should choose to exercise an option not theretofore accorded to him the landlord would in return make a reduction in the rent. Even, however, if this conversation could be construed as equivalent to the revocation of the privilege, I find nothing to justify the assumption that the president of the plaintiff corporation had power to exercise such option. The lease was executed in the corporate name, and, in the absence of proof of express authority awarded to the president or of a course of conduct

on the part of the plaintiff which might estop it to deny the president's authority, I do not think that it extended so far. Not only did plaintiff urge this consideration upon the court, but it endeavored to prove affirmatively that the president had no such authority by offering its by-laws in evidence, which offer was refused over plaintiff's objection.

Of course, in the view which I take of the conversation testified to by the tenant, as a new agreement directly in conflict with the terms of the written lease, the absence of authority on the part of the president to make such agreement appears all the more clearly.

In my opinion the judgment should be reversed, and a new trial granted, with costs to appellant to abide the event.